**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Terri Lynn Dukes,<br><br>      Plaintiff,<br><br>vs.<br><br>Michael J. Astrue, Commissioner Social Security Administration,<br><br>      Defendant. | No. CV-07-1662-PHX-FJM<br><br>**ORDER** |

This is an action for judicial review of an administrative decision denying Social Security disability benefits. The court has before it plaintiff's motion for summary judgment (doc. 15), statement of facts (doc. 16), and supporting memorandum (doc. 17). The court also has before it defendant's cross-motion for summary judgment (doc. 19), statement of facts (doc. 20), and supporting memorandum (doc. 21).

**I**

Plaintiff is fifty-three years old and has worked predominately and most recently as a heavy equipment operator, but has also worked as a living-skill trainer in a group home, and as a waitress/bartender. She has not held any job since January 2002, her claimed onset date of disability. Plaintiff applied for Social Security benefits in May 2003, alleging

1  disability due to numerous conditions including asthma, arthritis, depression, and chronic
2  neck and back pain. <u>Admin. Record</u> at 73.  Her claim was denied in October 2004, and she
3  requested a hearing before an administrative law judge ("ALJ"), which was held August 15,
4  2006. The ALJ affirmed denial of benefits, and the Appeals Council denied review. Plaintiff
5  filed this action for judicial review pursuant to 42 U.S.C. § 405(g).

6        Prior to the denial of her initial claim, plaintiff was examined by two state agency
7  physicians. Dr. Keith Cunningham, M.D., issued a report focusing on her complaints of neck
8  and back pain. <u>Admin. Record</u> at 224–29. Dr. Daniel Watkins, Ph.D., prepared a report on
9  her mental condition. <u>Id.</u> at 234–41.  Prior to the hearing, the record also contained a
10 psychiatric review report and a residual functional capacity assessment completed by non-
11 examining medical consultants, <u>id.</u> at 242–63, as well as a medical assessment by treating
12 physician Dr. John Hierling, D.O., <u>id.</u> at 284–88.

13       At the hearing, the ALJ was prepared to elicit testimony from two non-examining
14 medical experts:  a clinical psychologist present in the hearing room and an orthopedic
15 surgeon on conference call, both of whom had reviewed the record.  Also present and
16 prepared to testify was a vocational expert.

17       Plaintiff was present with counsel, and the hearing began with her testimony about her
18 pain levels and daily routine.  The ALJ then began an exchange about plaintiff's use of
19 illegal substances. Referring to the mental health report prepared by Dr. Watkins, the ALJ
20 stated, "I see a fairly extensive substance abuse history of using methamphetamine." <u>Id.</u> at
21 397. According to Dr. Watkins' report, plaintiff reported "that she used methamphetamine
22 periodically from 1994 until 2003." <u>Id.</u> at 235.  However, at the hearing, plaintiff denied
23 having ever told Dr. Watkins that she used methamphetamine and, after much questioning,
24 only admitted to having tried it once. <u>Id.</u> at 400.

25       The ALJ then asked why Dr. Watkins would "make up something like this." <u>Id.</u> at
26 399. Plaintiff suggested it was possible "that they would tell a fib" to keep her from getting
27 benefits, or that the doctor confused his notes. <u>Id.</u> at 399, 400. The ALJ responded, "I don't
28 need to hear any more, this is totally incredible testimony, totally not credible." <u>Id.</u> at 400.

- 2 -

1   The ALJ gave plaintiff's counsel permission to contact Dr. Watkins to inquire if the report
2   might contain a mistake, but stated, "I don't see any point in going further here," id. at 403,
3   and he terminated the hearing without eliciting testimony from the medical consultants
4   experts or the vocational expert.

5   Plaintiff never provided a further statement from Dr. Watkins. However, following
6   the August 2006 hearing, plaintiff supplemented the record with treatment notes from
7   treating physician Dr. Hierling. The ALJ issued his decision November 21, 2006.

8   The ALJ conducted the five-step sequential evaluation set out in 20 C.F.R.
9   § 404.1520. If at any step in this evaluation the claimant is found disabled or not disabled,
10  the inquiry ends. Plaintiff satisfied step one, because she was not performing substantial
11  gainful work. At step two, the ALJ determined that the record revealed the following
12  "severe" impairments that satisfied the durational requirements under the Regulations:
13  lumbar and cervical degenerative disc disease, history of tracheal mass, and cervical
14  osteophytic stenosis. Admin. Record at 16. At step three, the ALJ concluded that the mere
15  existence of these impairments was not sufficient for a finding of disability, so the evaluation
16  continued. Id. at 18.

17  For steps four and five, the ALJ had to determine plaintiff's "residual functional
18  capacity" ("RFC"), meaning the level of exertion of which she is capable. The ALJ found
19  plaintiff capable of a "reduced range of light exertional work," meaning specifically that she
20  can occasionally lift and carry no more than twenty pounds, can frequently lift and carry no
21  more than ten pounds, can stand and/or walk for six to eight hours in an eight hour day, and
22  has no limitations in her ability to sit. Id. at 19.

23  At step four, a claimant will be found not disabled if the RFC dictates an ability to
24  do past work. The ALJ determined plaintiff incapable of her previous work as a heavy
25  equipment operator or living-skill trainer in a group home, both jobs being considered heavy
26  work, or her previous work as a waitress/bartender, which is considered medium work.
27  Therefore, the evaluation proceeded to the final step.

28

1 At step five, a claimant will be found disabled unless the Social Security 2 Administration shows the existence in the national economy of other jobs of which the 3 claimant is capable. Often, this showing can be made constructively, with the use of the 4 Medical–Vocational Guidelines ("the grid"). See 20 C.F.R. §§ 404.1569, 404, subpart P, 5 app. 2. The grid identifies whether jobs are available given various combinations of RFC, 6 age, education, and experience, and accordingly dictates a finding of disability or no 7 disability. Here, using an RFC of a "reduced range of light exertional work," the grid 8 dictated no disability.

9 In this action for judicial review, plaintiff contends that the ALJ erred in two respects: 10 (1) that he became impermissibly adversarial during the administrative hearing and failed 11 to fully and fairly develop the record, and (2) that he erroneously rejected the opinion of 12 treating physician Dr. Hierling. Plaintiff's Motion at 7–8. We conclude that both of these 13 contentions are without merit.

**II**

15 The ALJ terminated the hearing without eliciting testimony from the state-agency 16 consultants. However, in reaching his decision, the ALJ carefully considered the medical 17 evidence in the record, including two MRIs of plaintiff's spine. In 2002, an MRI of the 18 lumbar spine showed disc dessication/degeneration, Admin. Record at 209, and an MRI of 19 the cervical spine showed "multilevel degenerative discogenic abnormalities" and "moderate 20 to severe osteophytic stenosis," id. at 207. The ALJ concluded that the MRIs revealed a 21 condition likely to cause pain and physical limitation. Id. at 209.

22 If there is a medically determinable impairment that could reasonably be expected to 23 cause the claimant's symptoms, an ALJ evaluates the degree of those symptoms by 24 considering all available evidence including clinical findings, treatment history, and 25 statements from medical sources. 20 C.F.R. § 404.1529(c)(1), (3). Additionally, an 26 ALJ may consider statements from third parties, evidence of the claimant's daily activities, 27 and the claimant's own testimony. Id.

1     An ALJ cannot require medical evidence to prove the severity of pain. Johnson v.
2  Shalala, 60 F.3d 1428, 1433 (9th Cir. 1995). However, objective medical evidence, such as
3  evidence of sensory deficit or motor disruption, is a useful indication "in making reasonable
4  conclusions about the intensity and persistence of symptoms." 20 C.F.R. § 404.1529(c)(2).
5  The ALJ noted that the MRIs did not reveal "nerve root impingement or foraminal
6  narrowing," which would have supported plaintiff's claim of disabling pain. Admin. Record
7  at 19. Her visits to the emergency room also did not reveal any neurological deficits. Id.
8  The ALJ concluded that the clinical findings demonstrate some physical limitation, but not
9  to the extent claimed by plaintiff.

10    Dr. Hierling was plaintiff's treating physician from 2001 to 2006. The ALJ pointed
11 out that Dr. Hierling's progress notes do not contain consistent complaints of pain. Id. The
12 notes largely record plaintiff's repeated requests for pain medication, and there is more than
13 one expression of concern that plaintiff was not taking the medication as directed. Id. at 309,
14 330. Plaintiff's attendance at Dr. Hierling's office was sporadic, and there appears to have
15 been only one or two thorough physical exams, with minimal findings. Id. at 309, 331. The
16 doctor noted that plaintiff did "not care for full surgical evaluation for the care of her injured
17 neck." Id. at 309.

18    Dr. Hierling completed a medical assessment "in support of [plaintiff's] application
19 for consideration for total disability." Id. at 284. Of course, the determination whether a
20 claimant is able to work is one reserved for the ALJ based on all of the evidence. 20 C.F.R.
21 § 404.1527(e)(1). In his assessment, Dr. Hierling opined that plaintiff can sit zero hours in
22 an eight hour day, can stand or walk for only two hours, can only lift up to ten pounds
23 occasionally, can only carry up to five pounds occasionally, and is incapable of pushing or
24 pulling controls with her hands or feet. Admin. Record at 286–87.

25    An ALJ may reject a treating physician's assessment only by providing "specific,
26 legitimate reasons for doing so, and this decision must itself be based on substantial
27 evidence." Rodriguez v. Bowen, 876 F.2d 759, 762 (9th Cir. 1989). The ALJ properly
28 rejected Dr. Hierling's assessment on the grounds that it suggests that plaintiff is nearly

1 completely bed-ridden and unable even to sit in a wheelchair. Admin. Record at 21. This
2 is obviously not the case given plaintiff's appearance at the administrative hearing and her
3 testimony that she walks the dog and takes her mother to the store. Id at 397.

4    In stark contrast to Dr. Hierling's assessment are those of examining physician
5 Dr. Cunningham and consulting physician Dr. Hopkins.  Dr. Cunningham reported that
6 abnormal clinical findings were limited to a decreased range of motion with complaints of
7 pain and that plaintiff was able to walk with a normal gait, squat, and stand. Id. at 228–29.
8 Both physicians determined that plaintiff has minimal physical limitations. The ALJ
9 recognized, however, that in light of plaintiff's determinable physical impairments, the
10 consultants' conclusions that plaintiff is capable of medium work were not persuasive. Id.
11 at 22. Therefore, the ALJ reduced plaintiff's RFC to a range of light work. Id.

12    The ALJ considered the third-party report of plaintiff's friend, but properly accorded
13 it little weight because the friend only sees the plaintiff about twice a month. Therefore, her
14 comments on plaintiff's daily routine do not appear to be based on first-hand experience. In
15 any event, the friend notes that plaintiff prepares her own meals, including a couple of good
16 meals a week, and walks the dog. Id. at 108–09. According to Dr. Watkins' report, plaintiff
17 is able to perform self-care skills independently, clean, shop, and do laundry. Id. at 235–36.
18 These daily activities tend to contradict plaintiff's allegations of disabling pain. See Bunnell
19 v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991).

20    The ALJ gave clear and convincing reasons for finding plaintiff's own testimony
21 not credible. See Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006). When questioned
22 about illegal drug use, plaintiff first denied ever having used methamphetamine, then
23 admitted trying it once. Admin. Record at 400. Dr. Watkins reported that plaintiff used
24 methamphetamine periodically from 1994 to 2003, id. at 235, but plaintiff told the ALJ that
25 Dr. Watkins never asked about her drug use, id. at 399. She was then unable to account for
26 the doctor's report and did not subsequently supply any further statement from Dr. Watkins,
27 despite the ALJ's invitation. Plaintiff contends that a "review of the medical file does not
28 show any indication of methamphetamine usage outside the statement of Dr. Watkins."

Response at 5. That is not true. On January 27, 2005, when plaintiff saw treating physician Dr. Hierling, he reported, "She is pacing in the room and flails her arms about on explanation of her current medical care and describes recurrent drug use, although in the past, there is a history of methamphetamine." Admin. Record at 307. Given the inconsistencies between the record and her statements at the hearing, plaintiff's testimony was not credible.

The ALJ did not err in rejecting the opinion of treating physician Dr. Hierling. We also conclude that the ALJ's termination of the hearing without eliciting testimony from the consulting experts was not unduly prejudicial. The ALJ only has a duty to develop the record "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459–60 (9th Cir. 2001). Here, the record regarding plaintiff's neck and back pain is sufficient and, for all of the foregoing reasons, supports the ALJ's finding of no disability. Furthermore, the ALJ correctly concluded that there is an utter lack of medical evidence that plaintiff's tracheal mass, respiratory problems, or depression significantly contribute to her limitations.

### III

Accordingly, **IT IS HEREBY ORDERED DENYING** plaintiff's motion for summary judgment (doc. 15) and **GRANTING** defendant's cross motion for summary judgment (doc. 19). The clerk is directed to enter final judgment.

DATED this 19th day of June, 2008.

_Frederick J. Martone_
Frederick J. Martone
United States District Judge